## Courts *et al.* v. Happle *et al.*

### Trover for Conversion of Cotton.

1. *Nonjoinder of parties plaintiff.* — In an action of tort, a demurrer does not lie on account of the nonjoinder of parties plaintiff, unless the complaint shows the names of the parties improperly omitted.

2. *Demurrer; specification of causes.* — A demurrer in these words, "Because, under two counts in case, plaintiffs are not entitled to recover;" or these, "Because the counts are ambiguous and uncertain," is not a substantial compliance with the statute (Rev. Code, § 2656), which requires that the ground of demurrer shall be distinctly stated.

[Courts *v.* Happle.]

3. *Contract between agricultural laborers and their employer construed as creating tenancy in common in crops.* — A contract in writing between the owner or lessee of land and several agricultural laborers, by which the latter "agree to live with and work for" the former during the year, "for and in consideration of one fourth of the crop of corn and cotton raised on the farm," is a letting on shares, and creates between them a tenancy in common in the crop.

4. *When trover lies between tenants in common.* — A sale of the entire property in a chattel by one tenant in common is a conversion for which trover lies against him by his co-tenant.

APPEAL from the Circuit Court of Hale.

Tried before the Hon. M. J. SAFFOLD.

This action was brought by the appellants (twenty-three in number) against H. H. Happle, Daniel T. Webster, and H. F. Wilson, to recover damages for the conversion of the plaintiffs' interest in certain bales of cotton. The original complaint contained three counts; the first for the conversion of thirty-five bales of cotton, and the others for the conversion of the plaintiffs' undivided one fourth interest in one hundred and thirty-nine bales. Two other counts were afterwards added by amendment, as follows: "4. Plaintiffs claim of defendants, also, $2,500 damages, for that whereas the said plaintiffs, together with certain other laborers, made and cultivated a crop of cotton on the plantation known as the 'Stephens place,' belonging to the estate of William A. Jones, deceased, during the year 1867, and for the cultivation thereof, making and gathering the same, the laborers were to receive one fourth of the crops grown, cultivated, and gathered on said plantation during said year, by and under a contract made by them with one H. H. Happle, who had rented said plantation from the owner thereof; and thereby the plaintiffs became tenants in common with the said H. H. Happle of the said crops, until the same should be apportioned and divided; and whereas, the said Happle, together with the other defendants, the said Webster and Wilson, who acted as the factors of the said Happle, and confederating and combining with him so to do, and at some time between the 1st day of September, 1867, and the 1st day of March, 1868, the exact time being to the plaintiffs unknown, did, in the city of Mobile, and State of Alabama, sell the entire crop of cotton raised during said year on said place, to wit, one hundred and thirty-nine bales, to some party or parties who are unknown to the plaintiffs, as well the said plaintiffs' part thereof as the rest of said crop, whereby the said plaintiffs have been damaged as aforesaid, to wit, in the sum and amount of $2,500, as aforesaid. 5. Plaintiffs claim of defendants, also, $2,500 damages, for that whereas the said plaintiffs, together with certain other laborers, made and cultivated a crop of cotton, corn, &c., on a plantation in said county known as the 'Stephens place,' belonging to the estate of one William A.

Jones, deceased, during the year 1867, and for the cultivation, making, and gathering thereof, the said laborers were to receive and have one fourth of all the crops grown and gathered on said plantation during that year, by and under a contract made by them with the lessees of said place, who, in making said contract, styled and called themselves H. H. Happle & Co., and of whom the defendant H. H. Happle was one; and thereby the plaintiffs became tenants in common with the said Happle of the said crops, until the same should be divided and apportioned; and whereas the said Happle, together with the other defendants to this suit, acting as the factors and agents of the said Happle, who was in possession of the said crops as the tenant in common with the plaintiffs, and contriving with him so to do, did at some time, to wit, between the 1st day of September, 1867, and the 1st day of March, 1868, the exact time being unknown to plaintiffs, in the city of Mobile, and State of Alabama, sell, to wit, one hundred and nine bales of the crop of cotton planted and raised by said laborers on said place during the said year 1867, including the plaintiffs' part thereof, and without the consent of the plaintiffs, to some party or parties unknown to the plaintiffs, to the damage of said plaintiffs, as aforesaid," &c.

To these additional counts the defendants demurred, " in short, by consent," and assigned the following grounds of demurrer: " 1st, because the complaint shows that there are other parties to the contract than those mentioned in said complaint; 2d, because the complaint does not show who nor how many parties there are to the contract, other than said plaintiffs; 3d, because, under two counts in case, plaintiffs are not entitled to recover; and, 4th, because the counts are ambiguous and uncertain." The court sustained the demurrer, and the defendants then pleaded not guilty to the other counts, on which plea issue was joined.

On the trial, as the bill of exceptions shows, the plaintiffs proved, and read in evidence to the jury, the written contract between themselves and said H. H. Happle & Co., which was in these words : " We, the undersigned, do agree and bind ourselves to live with and labor for Messrs. H. H. Happle & Co. during the year 1867, for and in consideration of one fourth of the crop of corn and cotton raised on the farm known as the ' Stephens place; ' the proportionate part of each laborer to be decided by five competent persons, selected by common consent from the whole number of laborers employed on the farm. Furthermore, we do agree and bind ourselves to pay our own individual bills, and have all lost time from sickness deducted from our wages at reasonable rates, and to conform strictly to all rules and regulations of said farm, which are as follows :

[Courts *v.* Happle.]

1. The laborers shall perform six days' work during the week, unless excused by Messrs. Happle, and be at work actively at sunrise, and quit at sunset ; after which time they are to be relieved from duty, unless some emergency requires a continuance of labor longer; this to be decided by Messrs. Happle. 2. Any laborer, absenting himself during work days from the farm, without leave, shall be fined one dollar, and, in addition thereto, shall be charged one dollar for non-performance of duty on that day, or part of day. 3. Any laborer, refusing to obey any order or orders which may be given by the proper person or persons, shall be fined one dollar. 4. Any laborer, losing or destroying any harness, plows, hoes, or other farming implements, shall pay double the value of the said implements. 5. Wilful destruction of any part of the crop shall be finable. 6. It shall be the duty of each laborer to report to Messrs. Happle any violation of the above regulations that may come within his or her knowledge or suspicion. 7. For all fines assessed, one half shall be for the benefit of all the laborers on said farm. 8. The employers, Messrs. Happle, shall have the right at any time to discharge any laborer who fails or refuses to abide by the requirements of this contract, forfeiting all of his interest in said crop, which shall revert to his employers. In testimony of which, we hereunto set our hands and seals, heads of families signing for their families." The contract then contained a stipulation, signed by H. H. Happle & Co., in these words : "We promise to furnish the undersigned freedmen with food, fuel, and house-room, free of charge," and was subscribed by thirty-one freedmen.

" The plaintiffs then offered evidence tending to show that, in said year 1867, there was planted and gathered on said Stephens plantation about six thousand bushels of corn, one fourth of which was set apart to the laborers on the place in the fall of 1867, and also about one hundred and thirty-nine bales of cotton, classed middlings, of five hundred pounds each on an average ; that when the cotton was ginned and packed, in the fall of the year, they demanded the one fourth part thereof from said Happle & Co., who refused to deliver it, and, without their consent, shipped to Messrs. Webster & Wilson, their agents in Mobile, about one hundred and nine bales of said cotton ; that said Webster & Wilson sold said cotton, on or about the 1st day of January, 1868, at —— cents per pound, making the total net proceeds of sale about $5,523.81, for and on account of said H. H. Happle & Co. ; that plaintiffs demanded of defendants, before bringing this suit, their one fourth part of said cotton, which they refused to deliver, pay, or account for, or any part thereof. The plaintiffs offered evidence, also, tending to show that they and each of them fully performed their part of said

contract, and that the following laborers, to wit," [specifying the names and number of hands in each family], " making a total of fifty full hands, of those whose names appear on said contract, and of whom these plaintiffs represent forty parts, or four fifths of the whole.  It was admitted by the plaintiffs, that the provision of the contract requiring the proportional part of each laborer to be decided by five competent persons, selected by common consent from the whole number of laborers employed on the farm, was never complied with or carried into effect, as to the cotton mentioned in the complaint.

This being all the evidence, the court charged the jury that the contract read in evidence, ascertained and declared what laborers were to be employed on the plantation ; established regulations for their services, penalties for violations of these regulations, and for abuse or destruction of the property in common use or ownership ; and provided for the division of these fines or penalties among the parties, for the reduction by discharge of laborers, forfeiture of their interest to their employers, and for a board of distribution, selected from the laborers by common consent, to ascertain what proportion of the whole crop raised on the place should be awarded to each laborer, on the basis of one fourth of the whole crop to the whole number of laborers who signed it.  Also, having reference to all the provisions of the contract, that this was a contract defining and regulating the rights of each laborer, one with another, and with the employers ; that until the aliquot proportion of each laborer's share · was ascertained by said board, in accordance with the terms of said contract, laborers had no such ascertained and defined property in any portion of the crop, the aliquot proportion of which to each laborer had not then been ascertained, as to give them separate rights of action in trover, for the conversion of such ascertained part of the crop by the defendants ; it being admitted that a portion of the laborers who signed the contract and performed the services, *having* (?) brought their action in trover for the conversion of thirty-five bales, or one fourth of the cotton crop, and that the other laborers have not joined in the action, before any such aliquot proportion of each laborer had been ascertained, as prescribed by the contract, by the board of distribution provided for by the contract, — the jury cannot, upon the evidence submitted to them, ascertain and define the interest of each laborer, or the property of each which had been converted ; that, not being able to do this, the jury cannot assess the damages for the conversion of each laborers' share, and they must, therefore, find for the defendants."

This charge, to which an exception was reserved by the plaintiffs, and the sustaining of the demurrer to the amended counts in the complaint, are now assigned as error.

[Courts v. Happle.]

W. & J. Webb, for appellants.

Coleman & Seay, and Morgan & Jolley, contra.

PETERS, J. — 1. The first and second grounds of demurrer are the same. It is, in effect, an objection for want of all the proper parties plaintiffs. A demurrer only reaches defects which are apparent on the record. 1 Chit. Pl. 661. Here the record shows a sufficient cause of action in favor of the parties who sue; and it does not show that there are other named parties, who are entitled to be joined in the action. When this is the case, a demurrer is not a proper answer to the complaint. The objection should be enforced by plea in abatement. A plea in abatement shows cause to the court why the party should not be sued; or, if sued, not in the manner and form he now is. 1 Bac. Abr. 1, Bouv. ed.; 1 Chit. Pl. p. 446, et seq. That there are other necessary parties plaintiffs, who are omitted in this suit, is not admitted in the pleadings. Whether this is so or not, is matter of fact, on which issue may be taken. To raise this issue, and properly present it, is the office of a plea in abatement. The action is wholly in tort, and not on the contract of renting and hiring. The plaintiffs claim that they are entitled to a certain portion of the cotton, which the defendants have taken and converted to their own use, to the damage of the plaintiffs. This is done in sufficient form to present a material issue. Under our system of pleadings this is enough. Rev. Code, § 2629. It does not appear that any one else is entitled to any portion of the damages which the plaintiffs claim, or that they have no such property in the cotton taken and converted as to authorize them to bring this suit. The objection, then, of a want of parties plaintiffs should not have been sustained.[1]

2. The third and fourth causes of demurrer are too indefinite and general to require this court to notice them. The specific objection is not stated. Such grounds of objection are insufficient. Rev. Code, § 2656.

3, 4. Such contracts as that out of which this suit has arisen, are not without the deepest interest both to the laborer and the landlord in this State. The courts should, therefore, refrain from taking too narrow a view of the rights of the parties. It is just that the landlord should be paid his rent; and the laws of the State have amply provided for this end. Rev. Code, §§ 2961, 2962, 2963. It is equally just, and quite as

---

[1] The action in *Harrison* v. *Hazle*, to which the court is referred in appellees' brief, was founded on the contract, to recover damages for a breach of it. *Harrison* v. *Hazle*, June Term, 1871; head-note, p. 46. This is not, and the rule of law in that case which is here invoked does not apply.

important, that the laborer should be paid his hire. Neither should be deprived of what is their own. Guided by the analogies which seem to have been followed in cases similar to this I feel satisfied that the contract in this case constituted th ɔ laborers, who made the crops, and Happle, who rented the lands, tenants in common in the crops. Happle furnished the land, and the laborers furnished the work and labor necessary for its cultivation; and the produce made on the farm was to be divided in the manner and in the proportions that the parties had agreed. This, it is very clear, was the intention of the parties on both sides of the contract shown in the record. Such a contract is a letting on shares, and creates a tenancy in common in the products agreed to be divided. *Williams.* v. *Nolen*, 34 Ala. 167; *Smyth* v. *Tankersley*, 20 Ala. 212. It is equally well settled, in this court, that a sale of the entire property in the chattel, by one tenant in common, is a conversion for which trover may be maintained by his co-tenant. *Smyth* v. *Tankersley*, 20 Ala. 212, *supra; Parminter* v. *Kelly*, 18 Ala. 716; *Arthur* v. *Gayle*, 38 Ala. 259. The cases above cited leave these propositions without controversy in this State. They are to be regarded as settled law.

The evidence offered by the plaintiffs in the court below, which was received without objection, tends to prove the case made in the counts of the complaint; but the charge of the court, in effect, excludes it, or declares that it is insufficient. In neither of these aspects was it correct. It was, therefore, erroneous. We refrain from saying more, lest it might tend to embarrass the case on a new trial.

The judgment of the court below is reversed, and the cause is remanded for a new trial.